# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

ORANGE COUNTY COASTKEEPER, a California non-profit corporation,

Plaintiff,

v.

QUALITY ALUMINUM FORGE, LLC, an Ohio limited liability company; SIFCO INDUSTRIES, INC., an Ohio corporation; PRIVATE INVESTMENTS, LLC, a Wyoming limited liability company;

Defendants.

Case No. 8:26-cv-00412-FWS-DFM

**CONSENT DECREE**

**(Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq*.)**

# CONSENT DECREE

**WHEREAS,** Orange County Coastkeeper is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Costa Mesa, California;

**WHEREAS,** Orange County Coastkeeper's mission is to promote watershed resilience throughout Orange County, which it does through advocacy, education, research, restoration, and enforcement.

**WHEREAS**, Quality Aluminum Forge, LLC ("Quality Aluminum") operates a facility at 794 and 820 N. Cypress Street, Orange, California 92867 (the "Facility");

**WHEREAS**, Private Investments, LLC ("Private Investments") owns the land upon which the Facility operates;

**WHEREAS,** Private Investments is located at 2770 E. Ojai Drive, Brea, California 92821;

**WHEREAS**, SIFCO Industries, Inc. ("SIFCO") is the parent company of Quality Aluminum.

**WHEREAS**, Quality Aluminum is a wholly owned subsidiary of SIFCO.

**WHEREAS**, SIFCO is located at 330 N. Brand Boulevard, Glendale, California 91203.

**WHEREAS**, Quality Aluminum is engaged in forging operations for the aerospace industry, specializing in aluminum forging and finished machine components and assemblies for its customers;

**WHEREAS,** Quality Aluminum is categorized under Standard Industrial Classification ("SIC") Code 3463, Nonferrous Forgings;

**WHEREAS**, storm water discharges associated with industrial activity at the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order No. 97-03-DWQ, as amended by Order Nos. 2014-0057-DWQ, 2015-0122-DWQ,

and 2018-0028-DWQ ("General Permit" or "Permit") and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, the operations at the Facility result in discharges of pollutants into waters of the United States and are regulated by the Clean Water Act Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, on December 23, 2025, Coastkeeper sent a notice of intent to file suit ("60-Day Notice") to Quality Aluminum, SIFCO, Private Investments, their registered agents for service of process, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Director of the Regional Water Quality Control Board, Santa Ana Region ("Regional Board"), and the Regional Administrator of EPA Region IX, alleging violations of the Clean Water Act and the General Permit at the Facility;

**WHEREAS**, on February 23, 2026, Coastkeeper filed a complaint against Quality Aluminum, SIFCO, and Private Investments in the Central District of California, Civil Case No. 8:26-cv-00412-FWS-DFM (the "Complaint");

**WHEREAS**, Plaintiff's Complaint alleges violations of the General Permit and the Clean Water Act for Defendants' discharges of pollutants into storm drains and surface waters, which discharge to the Santa Ana River, a water of the United States, which discharges into the Pacific Ocean (collectively, the "Receiving Waters");

**WHEREAS**, Coastkeeper, Quality Aluminum, SIFCO, and Private Investments (together, the "Settling Parties" or "Parties") agree that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the 60-Day Notice without further proceedings; and

**WHEREAS**, all actions taken by Defendants pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local rules and regulations.

**NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1. The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A).

2. Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations are taking place is located within this District.

3. The Complaint states a claim upon which relief may be granted against Defendants pursuant to Section 505 of the CWA, 33 U.S.C. § 1365.

4. Coastkeeper has standing to bring this action.

5. The Court shall retain jurisdiction over this action for purposes of interpreting, modifying, or enforcing the terms of this Consent Decree, or as long thereafter as necessary for the Court to resolve any motion to enforce this Consent Decree, but only regarding issues raised within the Term of this Consent Decree.

## I. OBJECTIVES

6. It is the express purpose of the Settling Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues alleged by Coastkeeper in its 60-Day Notice. These objectives include compliance with the provisions of this Consent Decree, compliance with all terms and conditions of the General Permit, and compliance with all applicable sections of the CWA.

7. In light of these objectives and as set forth fully below, Defendants agree to comply with the provisions of this Consent Decree, terms and conditions of the General Permit, and all applicable sections of the CWA at the Facility.

## II. AGENCY REVIEW AND CONSENT DECREE TERM

### A. Agency Review of Consent Decree

8. Agency Review. Coastkeeper shall submit this Consent Decree to the United States Department of Justice and the EPA (together, the "Federal Agencies") for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, or upon the date that the Federal Agencies provide a no objection letter, whichever is earlier (the "Agency Review Period").

9. Court Notice. Coastkeeper shall notify the Court of the receipt date by the Federal Agencies, as required by 40 C.F.R. § 135.5, in order to coordinate the Court's calendar with the 45-day review period.

10. Entry of Consent Decree. Promptly following the expiration of the Agency Review Period, Coastkeeper shall submit the Consent Decree to the Court for entry.

### B. DEFINITIONS

11. Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in the CWA or in regulations or rules promulgated under the CWA have the meaning assigned to them in the statutes or regulations or rules. Whenever terms listed below are used in this Consent Decree, the following definitions apply:

a. "BAT" means the Best Available Technology Economically Achievable.

b. "BCT" means the Best Conventional Treatment Technology.

c. "BMPs" means Best Management Practices.

d. "Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

e. "Day" or "day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the

close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

f. "Discharge Point" means each outfall and discharge location designated in the SWPPP for Quality Aluminum.

g. "Effective Date" means the effective date of this Consent Decree, which shall be the date of full execution by the Parties.

h. "Entry Date" means the day this Consent Decree is approved and entered by the Court.

i. "Qualified Industrial Storm Water Practitioner" or "QISP" shall have the definition set forth in Section IX.A of the General Permit.

j. "Qualifying Storm Event" or "QSE" shall have the definition set forth in Section XI.B of the General Permit.

k. "Reporting Year" means the period from July 1 of a given calendar year to June 30 of the following calendar year.

l. "SMARTS" means the California State Water Resources Control Board's Stormwater Multiple Application and Report Tracking System.

m. "SWPPP" means a Storm Water Pollution Prevention Plan.

n. "Wet Season" means the period of October 1 – April 30 in any given year.

o. "Forecasted Rain Event" means a rain event with a greater than 25% probability of at least 0.1 inches of rain predicted by the National Oceanic and Atmospheric Administration (NOAA).

p. "794 Bioswale" shall refer to the bioswale into which stormwater drains into at Quality Aluminum's property on 794 North Cypress Street.

q. "820 Catch Basin" shall refer to the catch basin into which stormwater drains into at Quality Aluminum's property on 820 North Cypress Street.

r. "Advanced Treatment" means a treatment BMP utilizing polymer- or electrostatically-assisted filtration or technology equivalent in performance, designed in accordance with General Permit Section X.H.6.

s. "Term" means the period between the Effective Date and the "Termination Date."

t. "Termination Date" means the latest of:

i. Three (3) years from the Effective Date, unless there is an ongoing, unresolved formal dispute, as described in Section IV herein, regarding Defendants' compliance with this Consent Decree;

ii. If there is an ongoing, unresolved formal dispute regarding Defendants' compliance with this Consent Decree, the Consent Decree will terminate within seven (7) days following the earlier of: (1) notice by the Settling Party that invoked Dispute Resolution procedures described herein that the dispute has been fully resolved, or (2) an order of the Court resolving the dispute;

iii. Notwithstanding the above, if the Regional Board approves a Notice of Termination submitted for the Facility pursuant to Section II.C of the General Permit, the Termination Date shall be the later of: (1) the date of the Regional Board's Approval of the Notice of Termination for the Facility, or (2) seven (7) calendar days from Quality Aluminum's completion of all payments required by this Settlement Agreement.

**C. EARLY TERMINATION**

i. Notwithstanding the foregoing, if the sample results for samples taken at the Facility as required by this Consent Decree do not trigger an Action Plan as defined in Paragraph 24 following the second year of this Consent Decree, and provided that all accrued monetary obligations in this Consent Decree have been satisfied and that there are no ongoing, unresolved proceedings or processes to enforce the Consent Decree, then the Termination Date of this Consent Decree shall be thirty (30) days from the date Quality Aluminum provides written notification to Coastkeeper of its right to terminate pursuant to this Paragraph.

## III. COMMITMENTS OF THE SETTLING PARTIES

**A. STORM WATER POLLUTION CONTROL BEST MANAGEMENT PRACTICES**

12. Non-Storm Water Discharge Prohibition: A non-storm water discharge, as defined in the General Permit, that is not permitted by the General Permit and is within the reasonable control of Quality Aluminum shall be a violation of this Consent Decree.

13. Current and Additional Best Management Practices: In addition to maintaining the current BMPs described in Quality Aluminum's SWPPP, Quality Aluminum shall (1) develop and implement BMPs identified herein, and (2) develop and implement additional BMPs necessary to comply with the provisions of this Consent Decree and the General Permit, including but not limited to those that achieve BAT/BCT.

14. Non-Structural BMPs: Within thirty (30) days of the Effective Date, Quality Aluminum shall:

a. Cover all outdoor die storage at the Facility with tarps during the Wet Season and prior to a Forecasted Rain Event;

b. Implement a program to repair damaged pavement (pavement that is cracked or separated more than 0.5 inches completely through to the subsurface soils) and inspect the pavement yearly to identify materially deteriorated areas for repair. Complete the subsequent repair(s) before each Wet Season;

c. Establish a formal, written protocol for vacuum sweeping that includes the location and frequency of the sweeping. At a minimum, sweeping shall occur at least twice a week outside of the Wet Season, and within the last work shift before a Forecasted Rain Event if such forecast occurs when the Facility is in operation;

d. Manually sweep all areas inaccessible to the sweeper on the same schedule identified in Paragraph 14.c.;

15. Structural and Advanced BMPs: Within sixty (60) days of the Effective Date, Quality Aluminum shall implement BMPs for both the 794 Bioswale and 820 Catch Basin. Both are outlined below:

a. 794 Bioswale:

i. During the 2026-2027 Reporting Year, perform a hydrologic assessment to determine what single-day and multiple-day events the bioswale is capable of retaining without discharge. This assessment shall be based on the rain gauge station closest to the Facility having at least a 30-year precipitation record with at least daily recording and shall be completed by July 1, 2027.

ii. If the results from the aforementioned hydrological assessment indicate that the bioswale is not designed to retain the volume of runoff to, at a minimum, the 85th percentile, 24-hour storm event, Quality Aluminum shall propose a modification of the bioswale for Coastkeeper's reasonable review and comment

within sixty (60) days of the results of the assessment. Coastkeeper shall have thirty (30) days to provide Quality Aluminum with comments. Within twenty-one (21) days of receiving Coastkeeper's proposed revisions, Quality Aluminum shall consider each of Coastkeeper's recommended revisions and accept them or justify in writing why any comment is not incorporated.

b. 820 Catch Basin

i. Develop an operation and maintenance (O&M) plan for the catch basin insert and settling tank system along with an accompanying manual for staff use. The O&M plan shall include, at a minimum, a filter change and full system cleanout annually, prior to the start of the Wet Season.

**B. SAMPLING AT THE FACILITY**

16. Frequency: During the Term, Quality Aluminum shall collect samples of storm water discharge from each Discharge Point(s) during no fewer than four (4) Qualifying Storm Events ("QSEs") per Reporting Year. Quality Aluminum shall sample at least two (2) QSEs during each half of the Reporting Year. If Quality Aluminum is unable to collect samples from two (2) QSEs during the first half of the reporting year, it shall make reasonable attempts to collect all four (4) samples in the second half of the reporting year.

17. Documentation. To document the storm water discharge and discharge location, an employee shall take photographs of the sample bottles from the storm water discharge after the samples are collected (the "Sampling Photographs").

18. Rain Gauge: Quality Aluminum shall maintain a recording rain gauge capable of recording rainfall to 0.1 inches on an hourly basis. Quality Aluminum shall maintain the rain gauge in accordance with the manufacturer's recommendations,

maintain records of all maintenance and rain data during the duration of this Consent Decree, and provide such rain gauge data to Coastkeeper upon a request for documentation made pursuant to Paragraph 28.

19. Sampling Parameters: All samples collected pursuant to this Consent Decree shall be analyzed, at minimum, for the parameters listed in Table 1.

20. Laboratory and Holding Time: Except for pH samples, Quality Aluminum shall cause delivery of all samples to a California state certified environmental laboratory for analysis within allowable hold times, pursuant to 40 C.F.R. Part 136. Analysis of pH will be completed onsite using a calibrated portable instrument for pH in accordance with the manufacturer's instructions. During the Term, Quality Aluminum shall exclusively use a calibrated portable instrument for measuring pH in accordance with the manufacturer's instructions and shall not use wide range litmus pH paper or other equivalent.

21. Detection Limit: Quality Aluminum shall request that the laboratory use analytical methods adequate to detect the individual contaminants at or below the values specified in the General Permit and Table 1 below.

22. Reporting: Quality Aluminum shall provide complete laboratory results of all samples collected at the Facility to SMARTS in accordance with the General Permit and shall provide copies to Coastkeeper within thirty (30) days of receiving the laboratory report with the results.

**C. REDUCTION OF POLLUTANTS IN DISCHARGES**

23. Table 1 Numeric Limits: Quality Aluminum shall develop and implement BMPs to reduce pollutants in storm water at the Facility to levels below those in Table 1.

TABLE 1

| Analytes | Values | Source of Limit |
|---|---|---|
| pH | 6.0 – 9.0 | Permit NAL |
| Oil and Grease (O&G) | 15 mg/L | Permit NAL |
| Total Suspended Solids (TSS) | 100 mg/L | Permit NAL |
| Zinc (Zn) | 0.26 mg/L | Permit NAL |
| Dissolved Zinc (Zn) | 0.12 mg/L | California Toxics Rule (CTR) |
| Aluminum (Al) | 0.75 mg/L | Permit NAL |
| Nitrate + Nitrite Nitrogen (N+N) | 0.68 mg/L | Permit NAL |
| Iron (Fe) | 1 mg/L | Permit NAL |

24. Action Plan Trigger: Beginning in the 2026-2027 Reporting Year, the action plan requirements set forth in Paragraph 25 shall be triggered upon the occurrences of any of the following events: (1) two exceedances of the Table 1 value for the same pollutant from any outfall during a Reporting Year; (2) three exceedances of any combination of pollutants from any outfall during a Reporting Year; or (3) a Level 1 or Level 2 Exceedance Response Action (ERA) has been triggered when sampling results indicate an annual NAL exceedance for a pollutant. *See* Permit Section XII.C and D.

25. Action Plan Requirement: As of the Effective Date, and for the remainder of the Term, if Quality Aluminum triggers an Action Plan as described in Paragraph 24, Quality Aluminum shall prepare and submit to Coastkeeper a plan for reducing and/or eliminating the relevant discharge of pollutants for the Facility ("Action Plan"). In any year that a Level 1 or Level 2 ERA has been triggered, the Level 1 or Level 2 ERA Report may serve as the Action Plan. In any year that an Action Plan is required, such Action Plan shall be submitted by July 1 following the sample results that triggered the Action Plan. No more than one Action Plan will be required in any given year.

a. Action Plan Requirements. Each complete Action Plan submitted shall include at a minimum: (1) the identification of the contaminant(s)

discharged in excess of the numeric limit(s); (2) an assessment of the source of each contaminant exceedance and/or applicable; (3) the identification of new BMPs that shall be implemented or existing BMPs that may be adjusted or enhanced to achieve compliance with the Table 1 Value(s), and (4) time schedules for implementation of the proposed BMPs. If an Action Plan was triggered due to exceedances from the 820 Catch Basin, identification of additional BMPs shall include an evaluation of either collecting and pumping runoff from the 820 Catch Basin to the 794 Bioswale or Advanced Treatment. The evaluation shall also include an investigation of alternative catch basin insert media targeting zinc, aluminum, iron, and nitrate + nitrite-nitrogen. The time schedule(s) for implementation shall ensure all BMPs are implemented as soon as reasonably possible, but in no event later than October 1 following the submittal of the Action Plan, unless a later implementation date is mutually agreed upon by the Settling Parties.

b. Action Plan Review: Coastkeeper shall have thirty (30) days upon receipt of Quality Aluminum's complete Action Plan to provide Quality Aluminum with comments. Within fourteen (14) days of receiving Coastkeeper's proposed revisions to an Action Plan, Quality Aluminum shall consider each of Coastkeeper's recommended revisions and accept them or justify in writing why any comment is not incorporated. Action Plan(s) developed and implemented pursuant to this Consent Decree are an obligation of this Consent Decree. Any disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below. Disputes regarding the adequacy of a

particular BMP shall not impact the schedule for implementing any other BMP set forth in the Action Plan.

c. Quality Aluminum shall revise the Facility's SWPPP within forty-five (45) days of completion of the Action Plan to reflect the changes required by the Action Plan. Quality Aluminum shall notify Coastkeeper in writing when the Action Plan has been implemented and shall submit the revised SWPPP to Coastkeeper for review and comment.

d. Action Plan Payments: Quality Aluminum shall pay Six Thousand Dollars ($6,000.00) each time an Action Plan is submitted to Coastkeeper at the same time that the Action Plan is submitted. Payments shall be made to "Orange County Coastkeeper" via certified mail, return receipt requested to Orange County Coastkeeper, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626. Failure to submit a payment as required under this Paragraph will constitute a breach of the Consent Decree.

**D. VISUAL OBSERVATIONS**

26. Storm Water Discharge Observations: During the Term, trained staff shall conduct visual observations during each QSE that is sampled in accordance with Section XI.A.2 of the General Permit. Staff shall also be assigned to observe the 794 Bioswale at all potential discharge locations during each QSE to verify that it does not discharge. Assigned staff shall keep a record of these observations and submit them to Coastkeeper at the end of each Reporting Year.

27. Monthly Visual Observations: During the Term, trained staff shall conduct monthly non-storm water visual observations in accordance with Section XI.A.1 of the General Permit.

**E. MAINTAINING RECORDS AND RECORD REQUESTS**

28. Quality Aluminum shall maintain records, which may include photographs, to document compliance with all terms of this Consent Decree, including, but not limited to Paragraphs 14, 15, 17, 26, 27, and 32. Coastkeeper can request a copy of these records in writing, and Quality Aluminum shall provide Coastkeeper with a copy of such requested records within fourteen (14) days of receipt of a written request from Coastkeeper for those records, provided, however, that any photographs or records that contain proprietary or confidential business information may be withheld by Quality Aluminum.

**F. EMPLOYEE TRAINING**

29. Within sixty (60) days of the Effective Date, Quality Aluminum shall develop and implement an employee training program that meets the following requirements and ensures (1) that there is a sufficient number of employees working at the Facility designated to achieve compliance with the General Permit and this Consent Decree ("Designated Employees"), and (2) such Designated Employees are trained to perform the required activities to maintain compliance with the General Permit, the Facility's SWPPP, and this Consent Decree; and (3) all full-time regular (non-temporary) Quality Aluminum employees (hereinafter referenced as "ALL Employees") receive basic information regarding housekeeping and storm water best management practices (the "Training Program").

30. Designated Employee Training shall at a minimum, include:

a. Non-Storm Water Discharges. Designated Employees shall be trained on the General Permit's prohibition of non-storm water discharges so that Designated Employees know what non-storm water discharges are, that non-storm water discharges can result from improper surface washing or the release of any substance from the Facility, and how to detect and prevent non-storm water discharges.

b. The SWPPP and BMPs. All Designated Employees shall be trained on the SWPPP and, specifically, BMP implementation and/or maintenance, as applicable, to ensure BMPs are implemented effectively to prevent the exposure of pollutants to storm water and prevent the discharge of contaminated storm water from the Facility. All training of Designated Employees must include the requirements of the General Permit and this Consent Decree including the additional BMPs outlined in Paragraphs 14 and 15 above.

c. Visual Observation. Quality Aluminum shall designate and train Designated Employees necessary to collect storm water samples from each discharge location at the Facility and conduct visual monitoring, as required by this Consent Decree. Such training shall include sampling protocols, including chain of custody requirements, to ensure storm water samples are collected, stored, and submitted to a certified laboratory consistent with the requirements of this Consent Decree.

d. Storm Water Sampling. Quality Aluminum shall identify Designated Employees necessary to collect storm water samples as required by this Consent Decree and the General Permit. The Training Program shall include training of Designated Employees sufficient to ensure: (i) sampling protocols, including chain of custody requirements, are followed at all times and, (ii) storm water samples are collected, stored, and submitted to a certified laboratory, consistent with requirements of this Consent Decree.

e. Training Implementation. Training of at least two Designated Employees (hereinafter referenced as “Designated Trainers”) shall be provided by a Qualified Industrial Storm Water Practitioner (a “QISP,” as defined in Section IX.A of the Permit) familiar with the

requirements of this Consent Decree and the General Permit. The Designated Trainers and/or the QISP shall provide the training set forth in this Paragraph 30.

f. Language. The Training Program shall be conducted, and all training materials shall be made available, in the language in which the employee(s) participating in the Training Program are fluent. If necessary to accomplish the foregoing or where translation would otherwise contribute to: (i) staff comprehension of the Training Program and/or, (ii) compliance with this Consent Decree and the General Permit, Quality Aluminum shall provide translation services at all training sessions and translation of all training materials.

g. Training Program Frequency – Designated Employees. The Training Program shall be repeated annually or more frequently as necessary to ensure all Designated Employees are familiar with the requirements of this Consent Decree and the General Permit. Designated Employees should, in any event, receive training prior to assuming responsibilities under the General Permit or this Consent Decree.

31. All Employee Training Program. ALL employees shall receive basic training and information regarding housekeeping and storm water best management practices, which may be performed by a Designated Trainer or a QISP.

a. Training Program Frequency. ALL Employees who have not received training shall receive initial training to ensure they receive enough information regarding storm water housekeeping and best practices to comply with this Consent Decree and the General Permit. ALL Employees who are new shall receive this training within one year of hiring.

32. Training Records. Quality Aluminum shall maintain training records to document compliance with this section, including sign-in sheets documents which employees were trained, and shall provide Coastkeeper with a copy of such records if requested in accordance with Paragraph 28.

**G. STORM WATER POLLUTION PREVENTION PLAN**

33. SWPPP. Within sixty (60) days of the Effective Date, Quality Aluminum shall amend the Facility's SWPPP to address all deficiencies alleged in the Notice Letter and incorporate the requirements of the General Permit and this Consent Decree.

34. Revising the SWPPP. Quality Aluminum shall revise the Facility's SWPPP if there are any significant changes in Quality Aluminum's operations that will likely affect storm water discharges, including but not limited to changes to storm water discharge point(s) or significant changes/additions to the BMPs at Quality Aluminum, within sixty (60) days of the occurrence of any of the above-listed events.

35. Commenting on Revised SWPPPs. Quality Aluminum shall submit each revised SWPPP to Coastkeeper for review and comment within thirty (30) days of its completion. Coastkeeper shall provide comments, if any, to Quality Aluminum within thirty (30) days of receipt of the SWPPP. Within thirty (30) days of receiving Coastkeeper's comments on the SWPPP, Quality Aluminum shall accept and incorporate Coastkeeper's comments into the SWPPP or, alternatively, justify in writing why any comment is not being incorporated. Any disputes as to the adequacy of a SWPPP and/or Quality Aluminum's failure to incorporate Coastkeeper's comments shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below.

**H. COMPLIANCE MONITORING AND REPORTING**

36. Coastkeeper may conduct up to two (2) site inspections ("Site Inspection") of the Facility per Reporting Year for the purpose of ensuring compliance with this Consent Decree and the General Permit. In the event of a dispute regarding Quality

Aluminum's compliance with this Consent Decree and provided a Site Inspection would be relevant to resolving the Parties' dispute, the Parties agree to meet and confer regarding one additional Site Inspection at Coastkeeper's request. Coastkeeper shall not unreasonably request, and Quality Aluminum shall not unreasonably deny, the additional Site Inspection. Any Site Inspection shall occur during normal business hours, and Coastkeeper will provide Quality Aluminum with at least seventy-two (72) hours' notice prior to a Site Inspection. For any Site Inspection requested to occur in wet weather, Coastkeeper shall be entitled to adjust timing or reschedule during normal business hours in the event the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the Facility in wet weather. Notice will be provided by electronic mail to the individual(s) designated below at Paragraph 62. Coastkeeper shall be permitted to take photographs or video recordings during any Site Inspection; provided, however, that any such photographs or video shall be submitted to Quality Aluminum for review to determine if such photographs or video contain proprietary or confidential business information, and if so, such photographs or video shall be permanently deleted.

37. Document Provision. During the Term, Quality Aluminum shall notify and submit documents to Coastkeeper as follows:

a. Quality Aluminum shall copy Coastkeeper on all compliance documents, monitoring and/or sampling data, material written communications and/or correspondences, or any documents related to storm water quality at the Facility that are submitted to the Regional Board, the State Board, and/or any state or local agency, county or municipality;

b. Within seven (7) business days of receipt by Quality Aluminum, Quality Aluminum shall send to Coastkeeper any compliance document, inspection report, material written communication and/or correspondence, or any document related to storm water quality at the

Facility received by Quality Aluminum from the Regional Board, the State Board, and/or any state or local agency, county, municipality. Quality Aluminum shall email electronic copies of documents to Coastkeeper at the relevant notice address contained below.

38. Compliance Monitoring. Quality Aluminum agrees to partially defray costs associated with Coastkeeper's monitoring of Quality Aluminum's compliance with this Consent Decree Forty Thousand Dollars ($40,000) until the Termination Date. In the event that that this Consent Decree extends beyond the Termination Date, Quality Aluminum shall reimburse Coastkeeper an additional Fifteen Thousand Dollars ($15,000) per year that the Consent Decree remains in effect. Payment shall be made within thirty (30) days of the Entry Date, and on the anniversary of the Entry Date should the term extend beyond three (3) years, as applicable. The payment shall be made via check, made payable to: "Orange County Coastkeeper" via certified mail, return receipt requested to Orange County Coastkeeper, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

## I. ENVIRONMENTAL MITIGATION, LITIGATION FEES AND COSTS, STIPULATED PENALTIES, AND INTEREST

39. Environmental Mitigation Project: To fund environmental project activities that will reduce or mitigate the impacts of storm water pollution from industrial activities occurring in and around the Santa Ana River, Quality Aluminum agrees to make a payment totaling Forty Thousand Dollars ($40,000.00) to Pacific Marine Mammal Center made within thirty (30) days of the Entry Date, payable to Pacific Marine Mammal Center and sent via overnight mail to 20612 Laguna Canyon Road, Laguna Beach, CA 92651. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

40. Coastkeeper's Fees and Costs: Quality Aluminum agrees to pay a total of One Hundred and Five Thousand Dollars ($105,000.00) to Coastkeeper to reimburse Coastkeeper for their investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter within thirty (30) days of the Entry Date. The payment shall be made payable to Orange County Coastkeeper and delivered by certified mail or overnight carrier to: Orange County Coastkeeper, 3151 Airway Ave., Suite F-110, Costa Mesa, CA 92626, unless made via wire transfer. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

41. Stipulated Payment. In the event that Quality Aluminum fails to submit to Coastkeeper any payment, document, report, or communication required by this Consent Decree, Coastkeeper shall provide written notice to Defendants of such missed deadline. Quality Aluminum shall have five (5) business days from receipt of such notice to respond to Coastkeeper, and if necessary, cure such delinquency. If Quality Aluminum fails to respond and, if necessary, cure such alleged delinquency within five (5) business days of receipt of Coastkeeper's notice, then Quality Aluminum shall pay a stipulated payment of One Hundred Dollars ($100.00) per day. Such stipulated payments shall be made by check payable to: Pacific Marine Mammal Center, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 39. Payment shall be sent via overnight mail to Pacific Marine Mammal Center, 20612 Laguna Canyon Road, Laguna Beach, CA 92651. Quality Aluminum agrees to make the stipulated payment within fourteen (14) days after the resolution of the event that precipitated the stipulated payment liability.

## IV. DISPUTE RESOLUTION

42. This Court shall retain jurisdiction over this matter for the Term for the purposes of enforcing its terms and conditions, and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree. The Court shall have

the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

43. Meet and Confer. Either party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other party in writing of the matter(s) in dispute and of the disputing party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in person) within fifteen (15) days of the date of the notice in an attempt to fully resolve the dispute no later than sixty (60) days from the date of the notice.

44. Conference. If the Parties cannot resolve the dispute within sixty (60) days of the meet and confer described in Paragraph 43 above, the Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Central District of California. The Parties agree to request an expedited hearing schedule on the motion. If the parties do not wish to request a conference with a magistrate, they may request a settlement conference.

45. In resolving any dispute arising from this Consent Decree before the Court, the prevailing Party shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions, or as otherwise provided for by statute and/or case law.

## V. MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

46. Coastkeeper's Waiver and Release of Defendants. In consideration of the above, upon the Effective Date of this Consent Decree, Coastkeeper, on its own behalf and on behalf of its officers and directors, releases Defendants, their officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims that were raised in the 60-Day Notice and/or the Complaint up to and including the Termination Date of this Consent Decree.

47. Defendants' Waiver and Release of Coastkeeper. In consideration of the above, upon the Effective Date of this Consent Decree, Defendants, on their own behalf and on behalf of their officers, directors, employees, parents, subsidiaries, affiliates and each of their successors or assigns, releases Coastkeeper, its officers and directors, from and waives all claims related to the 60-Day Notice and/or the Complaint up to and including the Termination Date of this Consent Decree.

## VI. MISCELLANEOUS PROVISIONS

48. No Admission of Liability. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Defendants maintain and reserve all defenses it may have to any alleged violations that may be raised in the future.

49. Counterparts. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

50. Authority. The undersigned representatives for Coastkeeper and Defendants each certify that s/he is fully authorized by the party whom s/he represents to enter into this Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

51. Construction. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

52. Full Settlement. This Consent Decree constitutes a full and final settlement of this matter.

53. Integration Clause. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

54. Severability. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

55. Choice of Law. The laws of the United States shall govern this Consent Decree.

56. Diligence: Quality Aluminum shall diligently file and pursue all required permit applications for any required BMPs and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

57. Effect of Consent Decree: Compliance with this Consent Decree does not mean that Quality Aluminum is complying with the General Permit, the Clean Water Act, or any other law, rule, or regulation.

58. Negotiated Settlement. The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one party.

59. Modification of the Consent Decree. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties and approved by the Court. Any request to modify any provision of the Consent Decree, including but not limited to any deadline(s)

set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

60. Assignment. Subject only to the express conditions contained in this Consent Decree, all the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Settling Parties, and their successors and assigns. In the event that Quality Aluminum's transferee or assign ("Assignee") will continue industrial operations at the Facility, Quality Aluminum shall notify Coastkeeper ten (10) days in advance of the proposed transfer or assignment ("the Assignment Notice") and within ten (10) days following the Assignment Notice, Quality Aluminum will provide Coastkeeper with a written assignment and assumption duly executed by the Facility and the Assignee assigning Quality Aluminum's obligations under this Consent Decree to the Assignee.

61. Force Majeure. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, pandemic, public health crisis, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure event shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any party seeking to rely upon this Paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Parties shall exercise due diligence to resolve and remove any Force Majeure event.

62. Correspondence. All notices required herein or any other correspondence pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

If to Coastkeeper:
Davina Shoumer
Email: davina@coastkeeper.org
Sarah J. Spinuzzi
Email: sarah@coastkeeper.org
ORANGE COUNTY COASTKEEPER
3151 Airway Avenue, Suite F-110
Costa Mesa, CA 92626
Phone: (714) 850-1965

With copies to:
Douglas J. Chermak
Email: doug@lozeaudrury.com
LOZEAU DRURY LLP
1939 Harrison Street, Suite 150
Oakland, CA 94612
Phone: (510) 836-4200

If to Quality Aluminum:
Michael Pierce
Quality Aluminum Forge, LLC
793 North Cypress Street
Orange, CA 92867
Phone: (909) 702-8922
Email: mpierce@Sifco.com

With copies to:
Kevin D. Margolis
Benesch, Friedlander, Coplan & Aronoff LLP
127 Public Square, Suite 4900
Cleveland, Ohio 44114
Phone: (216) 363-4161
Email: kmargolis@beneschlaw.com

If to SIFCO:
Eric Shultz
Chief Financial Officer
Sifco Industries, Inc.
70 East 64th Street
Cleveland, Ohio 44103
Phone: (216) 426-3163
Email: ESHULTZ@Sifco.com

With copies to:
Kevin D. Margolis
Benesch, Friedlander, Coplan & Aronoff LLP
127 Public Square, Suite 4900
Cleveland, Ohio 44114
Phone: (216) 363-4161
Email: kmargolis@beneschlaw.com

If to Private Investments:
Charles Parret
Law Office of Charles Parret, APC
22 Southern Wood
Irvine, California 92603-3708
Phone: (949) 644-3464
Email: charlesparret8@gmail.com

With copies to:
Krista M. Enns
Benesch, Friedlander, Coplan & Aronoff LLP
100 Pine Street, Suite 3100
San Francisco, California 94111
Phone: (628) 600-2243
Email: kenns@beneschlaw.com

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

63. If for any reason the District Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the District Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the District Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

The Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth below.

APPROVED AS TO CONTENT

Dated: 10/1/2026

By: Garry Brown
Garry Brown
Executive Director
Orange County Coastkeeper

Dated: 9/15/2026

By: Eric Shultz
Eric Shultz, Chief Financial Officer
Quality Aluminum Forge, LLC

Dated: 9/15/2026

By: Eric Shultz
Eric Shultz, Chief Financial Officer
SIFCO Industries, Inc.

Dated: 9/29/2026

By: ____________________
Stephen G. Hoblick, Managing Member
Private Investments, LLC

APPROVED AS TO FORM

Dated: 10/1/2026

By: Davina Shoumer
Davina Shoumer
Attorney for Orange County Coastkeeper

Dated: 10/1/2026

By: Krista M. Enns
Krista M. Enns
Attorney for Defendants

**IT IS SO ORDERED.**

**FINAL JUDGMENT**

Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between Coastkeeper and Quality Aluminum.

Dated: November 17, 2026

Hon. Fred W. Slaughter
UNITED STATES DISTRICT JUDGE